**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| ALEXANDRIA JONES, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 25-1129 (RC) |
| | : | | |
| v. | : | Re Document No.: | 8 |
| | : | | |
| DISTRICT OF COLUMBIA | : | | |
| OFFICE OF UNIFIED COMMUNICATIONS, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS**

**I. INTRODUCTION**

Plaintiff Alexandria Jones, a former Assistant Watch Commander in the District of Columbia's Office of Unified Communications ("Defendant" or "OUC"), brings this action against her former employer for discrimination, retaliation, and hostile work environment under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and Title VII, 42 U.S.C. § 2000e *et seq.*; as well as interference with the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*  Plaintiff alleges that OUC subjected her to discriminatory acts based on her age and disability once she began taking intermittent medical leave, culminating in her eventual termination.  Defendant has filed a partial motion to dismiss, arguing that Plaintiff's allegations fail to state claims for age-based discrimination, retaliation to the extent this claim relies on Title VII, and hostile work environment.  For the reasons below, the Court grants Defendant's partial motion to dismiss.

## II. FACTUAL BACKGROUND

Plaintiff Alexandria Jones worked at OUC from September 1998 until she was terminated in October 2023, when she was 59 years old. Compl. ¶¶ 7–9, 96, ECF No. 1. At the time of her termination, she was an Assistant Watch Commander, a supervisory position in the District of Columbia's Management Supervisory Service. *Id.* ¶ 10. Her duties as an Assistant Watch Commander included "supervising operations staff within the District's emergency and non-emergency call center system, overseeing shift activities, managing personnel issues, and ensuring the consistent delivery of essential communication services to residents and first responders." *Id.* ¶ 11.

Around May 2023, Plaintiff "began experiencing symptoms consistent with a psychological and cognitive health condition," including "difficulty concentrating, reduced cognitive functioning, mental fatigue, and episodic psychological distress." *Id.* ¶¶ 19–20. These symptoms "affect[ed] her ability to perform day-to-day tasks and supervisory duties." *Id.* ¶ 20. Around June 14, 2023, Plaintiff requested intermittent medical leave under the federal FMLA and the D.C. FMLA. *Id.* ¶¶ 17, 23. On June 26, 2023, the District of Columbia granted Plaintiff's request, authorizing her to take intermittent medical leave for up to two workdays per week between May 26, 2023 and December 31, 2023. *Id.* ¶¶ 28–29.

Soon after she began using her approved leave, Plaintiff alleges that supervisory personnel "subjected [her] to disparaging and dismissive comments" regarding her absences. *Id.* ¶ 33. She describes one such comment: around August 12, 2023, Operations Manager Calvin Williams stated in the presence of others that Plaintiff was "just using FMLA as an excuse to get out of work." *Id.* ¶ 34. Following this incident, Plaintiff alleges that she "was subjected to increasing professional isolation" because of her medical leave. *Id.* ¶ 38. She was excluded

from group emails, staff meetings, team briefings, key meetings, and decision-making discussions, and she was ignored or no longer consulted on operational and personnel matters that fell within her purview. *Id.* ¶¶ 38–41.

Plaintiff further alleges that around July 2023, she applied for a lateral transfer opportunity within the OUC for a supervisory role in the non-emergency 311 Operations Division. *Id.* ¶¶ 45–47. Although she "met all minimum and preferred qualifications" and had "internal seniority," Plaintiff was not interviewed for this position. *Id.* ¶¶ 47–48. OUC offered the position to a "younger, less experienced female employee who had fewer years of service and less supervisory tenure with the Agency" than Plaintiff. *Id.* ¶ 49. Then, in August 2023, Plaintiff applied for a Watch Commander position, which was an opportunity for a "promotional advancement from her current role" as Assistant Watch Commander. *Id.* ¶ 51. Although she "had previously served in an acting capacity in that role and possessed all requisite qualifications," she was not interviewed for the position. *Id.* ¶¶ 52–53. "The selected candidate was a younger employee." *Id.* ¶ 54. Plaintiff alleges that the timing of her exclusion from both hiring processes, "occur[ing] within weeks of her disclosure of a disability and the start of her intermittent FMLA leave," *id.* ¶ 55, "coupled with the selection of younger candidates," *id.* ¶ 58, raises "a strong inference of discriminatory motive based on both age and disability," *id.*

Around September 7, 2023, Plaintiff filed an internal complaint with OUC Director Heather McGaffin, claiming that she had suffered discriminatory and retaliatory acts. *Id.* ¶ 59. Plaintiff alleges that she identified three areas of concern in her complaint: (1) her non-selections for the lateral 311 and Watch Commander positions; (2) the disparaging comments by Operations Manager Calvin Williams regarding her use of FMLA leave; and (3) the broader pattern of retaliatory conduct and professional marginalization she experienced once she began

using her FMLA leave. *Id.* ¶ 60. She further alleges that she "expressed in clear terms that she believed she was being discriminated against on the basis of age and disability, and that her recent treatment appeared to be in retaliation for taking protected leave and engaging in protected EEO activity." *Id.* ¶ 61.

OUC did not act on her internal complaint. *Id.* ¶¶ 64–65. Instead, on September 14, 2023—one week after Plaintiff filed her complaint—OUC sent her a letter terminating her employment. *Id.* ¶ 66. "The termination letter cited no specific policy violations, misconduct, or performance concerns, and instead simply stated that [Plaintiff] was an 'at-will employee' and that her employment would be ending effective October 6, 2023." *Id.* ¶ 67.

On the same day as her termination, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on age, disability, and retaliation. *Id.* ¶ 5. After the EEOC issued Plaintiff a Notice of Right to Sue in February 2025, Plaintiff brought this suit against OUC, alleging disability discrimination under the ADA (Count I); age discrimination under the ADEA (Count II); retaliation under the ADA, ADEA, and Title VII (Count III); interference with the FMLA (Count IV); and hostile work environment under the ADA and Title VII (Count V). *Id.* ¶ 6.

## III.  LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, a court must assume the truth

4

of the plaintiff's factual allegations and grant the plaintiff "the benefit of all inferences that can be derived" therefrom. *Spaeth v. Georgetown Univ.*, 839 F. Supp. 2d 57, 62 (D.D.C. 2012) (quoting *Am. Nat'l Ins. Co. v. FDIC.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)). Nevertheless, the court "need not accept as true any legal conclusions couched as factual allegations or inferences unsupported by facts" in the complaint. *Id.*

## IV. ANALYSIS

Defendant observes that the "core" of Plaintiff's complaint "consists of her accusation that she suffered discrimination on account of her alleged disability." *See* Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. ("Def.'s Reply") at 1, ECF No. 10. While Defendant disputes the truth of these claims, it has not moved to dismiss them. Instead, it moves to dismiss Plaintiff's claims of age discrimination under the ADEA and retaliation under Title VII, arguing that Plaintiff's focus on OUC's anti-disability animus undercuts these claims. *See id.* It also moves to dismiss Plaintiff's hostile work environment claim under the ADA and Title VII. *Id.* The Court examines Plaintiff's age discrimination, Title VII retaliation, and hostile work environment claims in turn, and concludes that dismissal is warranted as to these claims.

### A. Age Discrimination

In Count II of her complaint, Plaintiff alleges that OUC discriminated against her because of her age when it rejected her applications for the lateral 311 and Watch Commander positions and offered these positions to younger candidates.[1] Compl. ¶¶ 95–104. Defendant argues that this claim should be dismissed because Plaintiff has failed to allege facts giving rise to a

---

[1] Plaintiff also alleges that her termination occurred "in a context that gives rise to an inference of age-based discrimination." Compl. ¶ 102. However, her complaint contains no facts elaborating on this allegation. Without more, this conclusory allegation is insufficient to withstand Defendant's motion to dismiss. *See Ashcroft*, 556 U.S. at 678.

5

reasonable inference of age discrimination.  *See* Def.'s Partial Mot. Dismiss ("Def.'s Mot.") at 6–7, ECF No. 8-1.  The Court agrees.

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  There are two "essential elements" to an age discrimination claim: (1) that "the plaintiff suffered an adverse employment action" (2) "because of the plaintiff's age." *Barot v. Aldon Mgmt.*, No. 18-cv-140, 2023 WL 6199075, at *6 (D.D.C. Sept. 22, 2023) (citation modified) (quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008)).  To survive a motion to dismiss, the plaintiff must "present facts that give rise to an inference of discrimination."  *Yoder v. Architect of the Capitol*, No. 23-cv-2214, 2025 WL 915611, at *4 (D.D.C. Mar. 26, 2025) (citation modified).  A plaintiff can establish this inference "through either direct evidence of animus" or "by showing that [she] was treated differently from similarly situated employees."  *Regis v. Noem*, No. 24-cv-2405, 2025 WL 1580808, at *3–4 (D.D.C. June 4, 2025) (citation modified).

Defendant does not contest that Plaintiff's non-selections for the lateral 311 and Watch Commander positions were "adverse employment actions."  Rather, Defendant argues that Plaintiff's allegations do not support an inference that Plaintiff's age motivated OUC's hiring decisions.  *See* Def.'s Mot. at 7.  Defendant primarily takes issue with Plaintiff's failure to provide the ages of the two candidates whom OUC allegedly hired instead of her.  *Id.*  In Defendant's view, Plaintiff cannot defeat its motion to dismiss through general allegations that the two candidates, whom Plaintiff offers as similarly situated comparators, were "younger" than her.  *Id.*  At a minimum, Defendant argues, Plaintiff "must provide a description of 'the events

6

leading to [an adverse employment action], provid[ing] relevant dates, and includ[ing] the ages . . . of at least some of the persons involved.'" *Id.* (alterations in original) (ultimately quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

The Court finds that Plaintiff's allegations do not give rise to a reasonable inference of age discrimination. However, this does not follow inexorably from Plaintiff's failure to plead the ages of her two proposed comparators. In that regard, Defendant's reliance on *Swierkiewicz* appears somewhat misplaced. The Supreme Court in that case did not, as Defendant insinuates, establish minimum pleading requirements for an age discrimination claim; instead, it held a petitioner's complaint *sufficient* to state a claim under the ADEA where it "detailed the events leading to his termination, provided relevant dates, and included the age[]" of an employee who replaced him. *Swierkiewicz*, 534 U.S. at 514; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("The [comparators'] exact ages are not ultimate issues or even legally mandated elements."). In fact, other courts in this District have allowed well-pleaded age discrimination claims to proceed to discovery even where comparators' precise ages were not identified. *See, e.g.*, *Regis*, 2025 WL 1580808, at *1, *4 (finding a complaint sufficient to raise an inference of age discrimination where the plaintiff, a 59-year-old Fingerprint Specialist, alleged that he experienced less favorable treatment than other Fingerprint Specialists "who were not . . . over the age of 40"); *Washington v. D.C. Hous. Auth.*, 170 F. Supp. 3d 234, 242 (D.D.C. 2016) (same where the plaintiff, a 47-year-old photographer, alleged that other photographers "outside of the ADEA's protected class" were not discharged like he was). This makes sense as a practical matter, given that "a plaintiff at the pleading stage, before conducting discovery, may not be able to establish a comparator's age with any certainty." *Milam v. ASCAP*, No. 23-cv-238, 2023 WL 5673953, at *5 (M.D. Tenn. Sept. 1, 2023).

Although a plaintiff need not allege a comparator's age to raise an inference of discrimination, this does not mean, however, that a plaintiff can avoid dismissal simply by pleading that a comparator is "younger," as Plaintiff here has done. *See* Compl. ¶¶ 49, 54, 58, 84, 100.  As the Supreme Court explained in *O'Connor v. Consol. Coin Caterers Corp.*, a prima facie case of age discrimination requires evidence adequate to create an inference of discrimination, and such an inference cannot be drawn when a plaintiff is treated less favorably than someone "insignificantly younger."  517 U.S. 308, 313 (1996).  There is no "magical formula" for determining when an age gap is "significant" enough to make out a prima facie case of discrimination, *see Barber v. CSX Distribution Servs.*, 68 F.3d 694, 699 (3d Cir. 1995), but the D.C. Circuit, for example, found a difference of seven years to be insufficient where the plaintiff relied exclusively on comparator evidence in support of her age discrimination claim, *see Dunaway v. Int'l Bhd. of Teamsters*, 310 F.3d 758, 767 (D.C. Cir. 2002).

True, "a plaintiff need not allege facts establishing a prima facie case of discrimination" at the pleading stage.  *Yoder*, 2025 WL 915611, at *4.  Thus, an ADEA plaintiff proceeding on a comparator theory need not specifically allege that she was treated less favorably than someone at least seven years her junior, for example.  *See, e.g.*, *Milam*, 2023 WL 5673953, at *5.  However, the plaintiff must plead at least some facts that, if proven, would give rise to an inference of age discrimination, whether through direct or circumstantial evidence.  *See Yoder*, 2025 WL 915611, at *4.  And this inference cannot be drawn, at any stage of the litigation, through a plaintiff's comparison to someone "insignificantly younger." *See O'Connor*, 517 U.S. at 313.  Accordingly, where a plaintiff attempts to raise a circumstantial inference of age discrimination at the motion-to-dismiss stage based solely on comparator evidence, her allegations must suggest that she was disadvantaged in favor of an employee "significantly

younger" than her.  *See Townsend v. United States*, 236 F. Supp. 3d 280, 307 (D.D.C. 2017); *Martinez*, 986 F.3d at 267 (holding that a plaintiff's "commonsense" allegation that comparators were "significantly younger" than him was "enough to get to discovery").

Here, Plaintiff pleads that OUC offered the positions she applied for to "younger" candidates, but that is not enough for the Court to infer that she was disadvantaged in favor of "significantly younger" candidates.  *See Real-Loomis v. Bryn Mawr Tr. Co.*, No. 20-cv-441, 2021 WL 1907487, at *6 n.10 (E.D. Pa. May 12, 2021) ("Plaintiff does not plead any 'significant' difference in age; she simply pleads they were 'younger.'  This is simply insufficient."); *Townsend*, 236 F. Supp. 3d at 307 (holding that because the plaintiff did not plead a comparator's age, but simply identified her as a "younger female," "no inference can be drawn that [the comparator] was 'significantly younger' than the plaintiff, undercutting any inference that age was a factor for any alleged disparate treatment").  Furthermore, even assuming Plaintiff's proposed comparators were "significantly younger," she alleges no facts at all about the candidate who was offered the Watch Commander position, which would preclude the Court from inferring that this candidate was similarly situated to Plaintiff.  *See Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 32 (2d Cir. 2016) (holding that the absence of "any information as to whether [the comparator] employees were otherwise similarly situated" prevents "even a minimal inference of age discrimination").

Notably, Plaintiff's complaint contrasts with those that courts have deemed sufficient to state an age discrimination claim despite not including the ages of proposed comparators or specifically alleging that the comparators were "significantly younger."  For example, in *Regis v. Noem*, referred to above, the 59-year-old plaintiff's allegation that he was treated worse than other employees "who were not . . . over the age of 40" indicated that he was at least nineteen

9

years older than his alleged comparators, which, unlike here, implies a "significant" age gap. 2025 WL 1580808, at *1, *4; *see also Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003) (noting that most circuits consider age differences of ten or more years to be significant). And in *Washington v. District of Columbia Housing Authority*, the 47-year-old plaintiff's allegations regarding employees "outside of the ADEA's protected class"—individuals aged 40 and older—suggested an age gap of at least eight years. 170 F. Supp. 3d at 242.

To be clear, Plaintiff could have survived dismissal without necessarily pleading that her two alleged comparators were "significantly younger." As the Third Circuit has explained, "[e]ven circumstantial-evidence cases do not always require an age gap . . . [if] [t]he plaintiff can allege actions by an employer that, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Martinez*, 986 F.3d at 266–67 (citation modified); *see also Aliotta v. Bair*, 567 F. Supp. 2d 113, 125 n.6 (D.D.C. 2008) (suggesting that an inference of discrimination can be raised even with "a slight difference in age" if there is further evidence "showing age was a determining factor"). But here, beyond Plaintiff's identification of proposed comparators, her complaint is entirely devoid of factual allegations tying OUC's actions to her age. Accordingly, because Plaintiff's allegations fail to raise a reasonable inference of age discrimination, her age discrimination claim must be dismissed in its entirety.

### B. Retaliation

Count III of Plaintiff's complaint pleads retaliation under the ADA, the ADEA, and Title VII, claiming that OUC terminated her in retaliation for her use of intermittent FMLA leave and for filing an internal complaint of discrimination with OUC Director Heather McGaffin. Compl. ¶¶ 105–12. Specifically, Plaintiff alleges that she was informed of her termination on September

10

14, 2023, just one week after she complained about various alleged discriminatory incidents to the OUC Director and two months after she began taking approved FMLA leave. *See id.* ¶¶ 59–61, 66, 106–09. Defendant moves to dismiss Plaintiff's retaliation claim only to the extent it relies on Title VII, arguing that Plaintiff has not alleged that she suffered retaliatory acts based on any characteristic protected under Title VII. *See* Def.'s Mot. at 8.

The Court concurs that dismissal of Plaintiff's retaliation claim is warranted to the extent it relies on Title VII. "Title VII protects employees from retaliation for opposing discriminatory employment practices, or making a charge, testifying, assisting, or otherwise participating in an investigation, proceeding, or hearing related to discriminatory employment practices *under that subchapter*." *Walker v. Child.'s Nat'l Med. Ctr.*, 236 F. Supp. 3d 136, 145 (D.D.C. 2017). Here, though, Plaintiff does not allege that she suffered retaliation after making a discrimination charge or otherwise engaging in protected activity related to discriminatory employment practices based on Title VII's protected characteristics of "race, color, religion, sex, or national origin." *See* 42 U.S.C. § 2000e-2(a)(1). Her alleged protected activity includes taking FMLA leave and filing a complaint "express[ing] . . . that she believed she was being discriminated against on the basis of *age* and *disability*." Compl. ¶ 61 (emphasis added). Plaintiff's retaliation claim thus arises under the ADEA and the ADA—and Defendant has not moved to dismiss this claim to the extent it relies on *those* statutes. But Plaintiff's retaliation claim must be dismissed to the extent it relies on Title VII, as she has not pleaded a claim cognizable under this latter statute.[2] *See Walker*, 236 F. Supp. 3d at 145.

---

[2] The Court further agrees with Defendant that Plaintiff's opposition brief fails to address the substance of Defendant's arguments in support of dismissal of Plaintiff's Title VII retaliation claim. *See* Def.'s Reply at 5. "It is well understood in this Circuit that when a plaintiff files an opposition brief to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."

11

### C. Hostile Work Environment

In Count V, Plaintiff pleads a hostile work environment claim under the ADA and Title VII based on allegations of "repeated and escalating hostility from supervisors and colleagues." Compl. ¶¶ 121–28.  Specifically, Plaintiff describes a "disparaging" comment regarding her disability—Operations Manager Calvin Williams's claim that Plaintiff was "just using FMLA as an excuse to get out of work"—and alleges that she was "exclud[ed] from meetings and communications central to her role" and "remov[ed] from supervisory responsibilities." *See id.* ¶¶ 33–42, 123.  These changes, Plaintiff alleges, "created an environment of professional alienation" and undermined her "ability to effectively lead and perform her duties." *Id.* ¶ 43. Defendant argues that this alleged conduct is insufficient as a matter of law to support a hostile work environment claim. *See* Def.'s Mot. at 8–10.

To state a hostile work environment claim under both the ADA and Title VII, "a plaintiff must show that [her] employer subjected [her] to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Garrett-Herndon v. District of Columbia*, No. 21-cv-1204, 2025 WL 2779982, at *5 (D.D.C. Sept. 30, 2025) (quoting *Hill v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232, 237 (D.C. Cir. 2018)); *see also Hill*, 897 F.3d at 237 (assuming without deciding that a hostile work environment claim is cognizable under the ADA). "Determining whether an actionable hostile environment claim exists requires an examination of all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

---

*Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003). Although the Court has chosen to dismiss Plaintiff's Title VII retaliation claim on the merits, dismissal would have also been warranted based on Plaintiff's concession.

unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 103 (2002). "The 'conduct must be extreme to amount to a change in the terms and conditions of employment.'" *Hill*, 897 F.3d at 237 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Even drawing all reasonable inferences from her allegations in her favor, Plaintiff has not stated a hostile work environment claim. First, as discussed in Section IV.B, *supra*, Plaintiff does not tie her supervisors' and colleagues' alleged harassment to any characteristic protected under Title VII, which is fatal to a hostile work environment claim under that statute. *See Byrd v. Vilsack*, 931 F. Supp. 2d 27, 45 (D.D.C. 2013) ("Importantly, the plaintiff must establish that the allegedly harassing conduct complained of was based on a protected characteristic."). Second, although Plaintiff does allege that her supervisors discriminated against her because of her disability, her allegations do not describe behavior that is sufficiently "severe or pervasive" to constitute a hostile work environment. Mr. Williams's alleged criticism of Plaintiff's use of FMLA leave, for example, resembles the sort of "offensive utterance" and "sporadic use of abusive language" that the Supreme Court has deemed insufficiently severe to make out a hostile work environment claim. *See Faragher*, 524 U.S. at 788. Furthermore, Plaintiff supports her hostile work environment claim with "the same discrete acts" upon which she bases her ADA discrimination and retaliation claims, which is "disfavored." *Townsend*, 236 F. Supp. 3d at 312; *see also Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003) ("Discrete acts constituting discrimination or retaliation claims . . . are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult."). Although Plaintiff's allegations that she was "exclud[ed] from meetings and communications" and "remov[ed] from supervisory responsibilities," *see* Compl. ¶ 123, might constitute discrete

13

discriminatory acts, Plaintiff cannot transform these acts, without further allegations showing of a "pervasive pattern of severe harassment," into a hostile work environment claim. *Wade v. District of Columbia*, 780 F. Supp. 2d 1, 19 (D.D.C. 2011); *see also Davis v. Ashcroft*, 355 F. Supp. 2d 330, 347–48 (D.D.C. 2005) (rejecting a hostile work environment claim based on alleged exclusion from management decisions and a partial loss of job duties). Accordingly, the Court dismisses Plaintiff's hostile work environment claim in its entirety.

## V.  LEAVE TO AMEND

In her opposition brief, Plaintiff requests leave to amend her complaint to "cure any perceived pleading deficiencies" should the Court rule for Defendant. *See* Pl.'s Opp'n to Def.'s Mot. at 20, ECF No. 9. Plaintiff is right that Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely" give leave to amend "when justice so requires." However, "an opposition brief is not the proper place to request leave to amend a complaint." *Strum v. Mardam-Bey*, No. 24-cv-401, 2025 WL 405120, at *11 (D.D.C. Feb. 4, 2025) (citation omitted). Without the benefit of a separate motion for leave to amend and proposed amended pleading, as required under our local rules, the Court is unable to evaluate the merits of Plaintiff's request for leave to amend. *See id.* The Court therefore denies Plaintiff's present request, but without prejudice to Plaintiff's filing of a separate motion for leave to amend in compliance with our local rules.

## VI.  USE OF NONEXISTENT QUOTATIONS

As Defendant observes, Plaintiff's counsel, Donald Quinn, cites to nonexistent quotations at several points in Plaintiff's opposition brief. *See* Def.'s Reply at 3 (noting that Plaintiff's "opposition brief persistently attributes quotations to cases that do not contain the quoted material"); *see also id.* at 4 & n.1. Mr. Quinn's citations to nonexistent quotations bear the hallmarks of reliance on an artificial intelligence tool. *See Williams v. Cap. One Bank, N.A.*, No.

24-cv-2032, 2025 WL 843285, at *7 (D.D.C. Mar. 18, 2025) ("Courts have recently seen increasing reliance on artificial intelligence in legal proceedings, leading to the use of nonexistent citations in court documents.").

Reliance on misquoted or nonexistent authorities in court filings is not acceptable: it contravenes an attorney's duty toward his client to exercise professional judgment and responsibility.  *See Park v. Kim*, 91 F.4th 610, 614–15 (2d Cir. 2024); Fed. R. Civ. P. 11(b)(2) ("By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law . . . ."); D.C. R. Pro. Cond. 3.3(a)(1) ("A lawyer shall not knowingly . . . [m]ake a false statement of fact or law to a tribunal . . . ."). Given Mr. Quinn's apparent violations of the Federal Rules of Civil Procedure and the District of Columbia Rules of Professional Conduct, Mr. Quinn is advised that further violations will not be tolerated and may result in sanctions and/or referral to a disciplinary committee.

## VII.  CONCLUSION

For the foregoing reasons, Defendant's Partial Motion to Dismiss (ECF No. 8) is **GRANTED**.  Counts II and V of Plaintiff's complaint are dismissed in their entireties, and Count III is dismissed to the extent it relies on Title VII.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  October 22, 2025                            RUDOLPH CONTRERAS
                                                                     United States District Judge