**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ALEXANDRIA JONES, | : | |
| | : | |
| *Plaintiff*, | : | Civil Action No.: 1:25-cv-1129 |
| | : | |
| v. | : | Re Document No.: 25, 26, 27 |
| | : | |
| DISTRICT OF COLUMBIA OFFICE OF UNIFIED COMMUNICATIONS, | : | |
| | : | |
| *Defendant*. | : | |

# MEMORANDUM OPINION

## GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DISCOVERY

## I. INTRODUCTION

Plaintiff Alexandria Jones, a former Assistant Watch Commander in the District of Columbia's Office of Unified Communications ("Defendant" or "OUC"), brings this action against her former employer, alleging that OUC violated her rights under the Americans with Disabilities Act ("ADA"); as well as interfered with her rights under the Family and Medical Leave Act ("FMLA"). *See* Compl. ¶¶ 74–128, ECF No. 2. Ms. Jones alleges OUC subjected her to discriminatory acts based on her disability once she began taking intermittent medical leave, culminating in her eventual termination. *Id.* ¶¶ 17–72.

Before the Court is Ms. Jones's motion to compel certain discovery, including responses to interrogatories and document requests. Pl.'s Mot. Compel Disc. ("Mot.") at 1, ECF No. 25-1. OUC filed a response objecting to Ms. Jones's motion, reasoning that the information Ms. Jones seeks has already been provided by OUC, and that anything further could not be found, does not exist, or is not relevant. *See* Def.'s Opp. Mot. Compel Disc. ("Opp.") at 1, ECF No. 26-1. For

the reasons below, the Court grants in part and denies in part Ms. Jones's motion to compel discovery.[1]

## II. LEGAL STANDARD

The parties in an action may pursue discovery by submitting requests for document production under Federal Rule of Civil Procedure 34 or by requesting answers to interrogatories under Rule 33. *Campaign Legal Ctr. v. Iowa Values*, 710 F. Supp. 3d 35, 46 (D.D.C. 2024). When a party "fails to answer an interrogatory" or "fails to produce documents," Rule 37 allows the opposing party to file a motion to compel discovery. Fed. R. Civ. P. 37(a)(1), (a)(3)(B)(iii)–(iv).

A motion to compel is subject to a burden-shifting framework. *Iowa Values*, 710 F. Supp. 3d at 46. The movant bears the initial burden of demonstrating that the information requested is relevant and that the opposing party's response is inadequate or incomplete. *Id.* "Relevance is construed broadly in the discovery context as 'any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *Id.* (citation omitted). If the movant has established relevance and incompleteness, "the burden shifts to the party opposing discovery to show why the discovery should not be permitted." *Id.* (citation omitted). "The party opposing discovery must 'show that the movant's request is burdensome, overly broad, vague, or outside the scope of discovery.'" *Id.* at 46–47 (citation omitted).

[1] Before the Court is also Defendant's Motion for Leave to File its Opposition to Plaintiff's Motion to Compel Under Seal (ECF No. 26) and Plaintiff's Motion for Leave to Seal Confidential Exhibit (ECF No. 27. The Court grants both motions.

In evaluating the motion, courts consider the parties' efforts to resolve the dispute, the relevance of the information sought, and whether the information sought is unreasonably duplicative or can be obtained from a more convenient source. *Barnes v. District of Columbia*, 289 F.R.D. 1, 5–6 (D.D.C. 2012). "A trial court has considerable discretion over discovery matters." *Bruch v. Griffith Energy Servs., Inc.*, No. CV 11-1101 (TFH/AK), 2014 WL 12799160, at *2 (D.D.C. Mar. 4, 2014) (citing *United States v. Krizek*, 192 F.3d 1024, 1029 (D.C. Cir. 1999)).

## III. ANALYSIS

At issue here are OUC's responses to multiple interrogatory requests and requests for production that Ms. Jones alleges are deficient or missing wholly from OUC's discovery production. *See generally* Mot. During discovery, Ms. Jones sent OUC a deficiency notice identifying categories of deficient responses. *Id.* at 3. Following that notice, OUC made a supplemental production of documents. *Id.* at 4. Nevertheless, Ms. Jones contends that the production partially addressed only two of the categories but left the remaining categories untouched. *Id.* Ms. Jones now moves to compel a response from OUC that fully addresses her discovery requests. *See id.* at 1. Further, Ms. Jones requests a sworn declaration from a records custodian detailing the searches conducted by OUC in its efforts to respond to Jones's request for documents. *Id.* at 17. Finally, Ms. Jones requests her reasonable fees and expenses under Fed. R. Civ. P. 37(a)(5). *Id.* at 18. The Court addresses each allegedly deficient or missing category in turn.

**A. OUC's allegedly deficient responses to interrogatories and requests for production**

**1. Decision-Maker Communications and Termination-Decision Documents**

Ms. Jones moves to compel additional documents responsive to Request for Production (RFP) Nos. 3, 9, and 19. Mot. at 8–9. RFP No. 3 requested all communications among OUC employees concerning Ms. Jones's FMLA leave. *Id.* RFP No. 9 sought all documents concerning the termination decision. *Id.* at 9. RFP No. 19 requested all communications, including emails, texts messages, and instant messages, among named OUC employees that mentioned Ms. Jones by name during the relevant time period. *Id.* at 8–9. Because OUC maintains that it has produced additional documents since Ms. Jones filed her motion, rendering Ms. Jones's motion moot, *see* Opp. at 7–8, the Court considers whether OUC conduced an adequate search or whether additional searches and production are warranted. The Court concludes that although the additional production OUC made after Ms. Jones filed her motion has rendered some of her requests moot, limited additional discovery is still warranted.

Ms. Jones asserts OUC "has produced no emails, text messages, or Teams messages among the decision-makers for the period spanning the August 29 termination request, the September 7 internal complaint, the September 12 DCHR approval, and the September 14 termination letter." Mot. at 9. Under the burden-shifting framework, Ms. Jones bears the initial burden of demonstrating that the information requested is relevant and that OUC's response is inadequate or incomplete. *See Iowa Values*, 710 F. Supp. 3d at 46. Communications among decision-makers in the days surrounding an adverse action are core causation and pretext evidence. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001); *Saint-Jean v. District of Columbia*, 844 F. Supp. 2d 16, 22 (D.D.C. 2012). Moreover, Ms. Jones points to OUC's interrogatory answers in which OUC acknowledges that "McGaffin, Williams, Jackson,

and Glover may have discussed Plaintiff's behavior and termination with one another in August 2023." Mot. at 9. Therefore, Ms. Jones has demonstrated the relevance of the information requested.

Ms. Jones has not demonstrated that OUC's response is inadequate regarding the email communications. After Ms. Jones filed her motion, OUC represented that those communications have since been searched and produced. Opp. at 7–8. Ms. Jones did not file a reply, so OUC's representation remains unrebutted. Accordingly, the Court will not require OUC to conduct a second search. However, Ms. Jones has demonstrated that OUC's response is inadequate regarding her requests for text messages and Teams communications. Ms. Jones asserts that, despite her specific requests for these categories of information, OUC has provided no "text messages, or Teams messages among the decision-makers," and that this information is still missing even after OUC's response and supplemental productions. Mot. at 9.

As Ms. Jones has met her burden regarding her request for production of text messages and Teams communications, the burden shifts to OUC to prove the discovery request is burdensome or should otherwise not be permitted. *See Iowa Values*, 710 F. Supp. 3d at 46–47. In response, OUC states that "[d]ue to technological limitations, searching texts and Teams is far more difficult than searching email." Opp. at 8. However, OUC does not explain the nature of those limitations, what a search would entail, or the burden such a search would impose. Courts considering similar objections have required more. *See Tangle Inc. v. Aritzia LP*, No. 23-CV-01196-JSW (KAW), 2025 WL 3687906, at *1 (N.D. Cal. Dec. 19, 2025) (rejecting an insufficiently explained burden objection to producing non-email communications); *cf. Harper v. FirstKey Homes, LLC*, No. 3:25-CV-642-L-BW, 2025 WL 3204729, at *3 (N.D. Tex. Nov. 17, 2024) (limiting Teams discovery after considering a chief information officer's affidavit

concerning the burden of additional production). Accordingly, the Court concludes that OUC must conduct a search for text messages and Teams communications among the relevant decisionmakers leading up to Jones's termination, comprised of the time period of August 29, 2023, through September 14, 2023.[2]

Additionally, Ms. Jones asserts OUC has not produced any of the "supporting documentation from 911 leadership" referenced in Director McGaffin's August 29, 2023, memorandum requesting authorization to terminate Ms. Jones's employment. Mot. at 6, 9. The requested information is relevant because, as Ms. Jones explains, the memorandum states that McGaffin reviewed "supporting documentation from 911 leadership" before requesting authorization to terminate Ms. Jones's employment. *Id.* Because the documentation informed the decision to terminate Ms. Jones, it bears directly on the reasons underlying that decision. OUC does not specifically address whether its more recent production includes these documents. Accordingly, the Court concludes that a limited search for any unproduced documentation responsive to this request is warranted.

**2. Promotional Selection Materials**

Ms. Jones moves to compel production of documents responsive to RFP Nos. 5, 6, 7, 15, which relate to her unsuccessful application for two positions within OUC: a 311 Operations Division supervisory position (the 311 position), and a Watch Commander position. Mot. at 9–10. RFP Nos. 5 and 6 request all documents concerning Ms. Jones's application for the 311 position and the Watch Commander position, respectively, as well as information relating to candidate evaluations. Def.'s Reponses to Pl.'s First Request for Production of Documents

---

[2] Before OUC conducts its search, the parties shall meet-and-confer in good faith to negotiate search terms and custodians.

("Def.'s Response to RFP") at 3–4, ECF No. 26-4. RFP No. 7 requests all communications between hiring decision-makers concerning the decision not to interview Ms. Jones for either position. *Id.* at 4. RFP No. 15 requests application materials for individuals selected for the 311 position and the Watch Commander position in 2023. *Id.* at 7.

Ms. Jones asserts OUC "has produced only conclusory interview notes." Mot. at 10. Ms. Jones suggests that the requested materials could illuminate OUC's selection criteria, how that criteria was applied across candidates, and the reasons for Jones's non-selection. *Id.* at 10. The information requested is thus relevant. *See Cruz v. McAleenan*, 931 F.3d 1186, 1192–93 (D.C. Cir. 2019). OUC represents that it has produced responsive materials on February 20, July 22, and August 3, 2026.[3] Opp. at 8. It therefore maintains that its production is complete and the motion is moot. *Id.* at 9. Because Ms. Jones did not file a reply, the OUC's response is again unrebutted. The Court therefore concludes that OUC's subsequent production renders the request moot.

**3. FMLA, ADA Interactive-Process and Accommodation Records**

Ms. Jones moves to compel the production of documents relating to her FMLA leave and ADA accommodation requests. RFP Nos. 2 and 3 concern Ms. Jones's application and approval for FMLA leave. Def.'s Response to RFP at 2. RFP No. 12 concerns Ms. Jones's ADA

---

[3] OUC acknowledges that Jones's counsel notified him that some of the documents OUC produced appeared to concern a different position not at issue in this litigation. Opp. at 8 n.1. Jones provided the correct posting number, and OUC stated in its August 4, 2026, opposition that it would "promptly confirm whether any additional responsive documents exist and produce them accordingly." *Id.* The Court has no basis to question OUC's initial assertion that it would provide all relevant documents. *See Jefferson v. Austin*, 345 F.R.D. 249, 260 (D.D.C. 2024) ("The Department stated that it would provide the responsive documents and, absent any explanation or justification for withholding any such documents, the Court will hold the Department to its statement that it has done so."). To the extent that OUC has not produced this information, Ms. Jones should promptly bring it to the Court's attention.

complaints and requests for accommodation. *Id.* at 6. Ms. Jones asserts OUC has not produced documents reflecting what it describes in its interrogatory as its "standard practice of assessing an employee's condition and limitations, exploring and implementing accommodations, and communicating with the employee at each step. . . ." Mot. at 10–11. Because these documents "go directly to liability," *id.* at 11, Ms. Jones has met her initial burden.

OUC responds that it has completed a reasonable search for all nonprivileged responsive materials and has produced all responsive documents. Opp. at 9. Therefore, OUC maintains that Ms. Jones's motion is moot. *Id.* However, Ms. Jones states that on June 30, 2026, OUC confirmed that "it received these records and would produce them promptly." Mot. at 11. Although OUC's opposition identifies documents it produced in February, Opp. at 9, it fails to explain whether the subsequently received records OUC referred to on June 30 were also produced. OUC's opposition does not resolve the apparent discrepancy, and OUC has not identified any burden or basis for withholding responsive materials. Accordingly, the Court directs OUC to produce any previously unproduced documents responsive to RFP Nos. 2, 3, 12 that it acknowledged it received in June 2026.

**4. Privilege Log**

Ms. Jones moves to compel OUC to serve a compliant privilege log or to certify that no responsive documents are withheld on any claim of privilege or protection. Mot. at 11. Subsequent to Ms. Jones's motion, OUC served a privilege log. Opp. at 12. Again, because Ms. Jones failed to file any reply rebutting OUC's assertion, Ms. Jones's motion to compel on this issue is moot.

**5. FMLA Comparator Information**

Ms. Jones moves to compel a supplemental, complete answer to Interrogatory No. 11, which requests the names, positions, FMLA leave dates, termination dates, and stated reasons for termination of OUC employees "who used FMLA leave during 2023 and were subsequently terminated within 180 days of using such leave." Def.'s Answer to Pl.'s First Interrogatories ("Def.'s Response to Interrogatories") at 7, ECF No. 26-5. Ms. Jones alleges that OUC improperly considered her FMLA leave in deciding to terminate her employment. Mot. at 12. So, Ms. Jones argues, information concerning other employees terminated after using FMLA leave could shed light on OUC's treatment of employees who exercised those rights and whether such leave factored into termination decisions. *See id.* "Comparative information concerning an employer's treatment of [protected groups] is relevant evidence in an individual discrimination claim against that employer. Such evidence can be used…to show that the employer's stated reasons for the challenged actions are a pretext for discrimination." *Cruz*, 931 F.3d at 1192 (citation omitted). In addition to the requested information being relevant, OUC's response to the request is incomplete because it has declined to provide the information requested.

In its objection to providing this information, OUC raises proportionality and privacy concerns. As OUC explains, employees may take FMLA leave for different reasons and be terminated under different circumstances, limiting the value of the requested information. *See* Opp. at 15–16. Whether discovery is proportional is determined by weighing six factors: "(1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit." *Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*,

322 F.R.D. 1, 6 (D.D.C. 2017); Fed. R. Civ. P. 26(b)(1). "No single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional." *Oxbow*, 322 F.R.D. at 6 (citation omitted). To satisfy the burden of showing that a discovery request is not proportional, "the refusing party must make a specific, detailed showing." *Lamaute v. Power*, 339 F.R.D. 29, 35 (D.D.C. 2021).

The Court finds this request proportional because, amongst other reasons, it is limited to a class of employees (those with FMLA leave) and narrowly tailored to the year in which Ms. Jones was terminated. *See Nuskey v. Lambright*, 251 F.R.D. 3, 9 (D.D.C. 2008) ("[D]iscovery should be reasonably related to the circumstances involved in the alleged discrimination and to a time frame involving the alleged discriminatory conduct and the individuals who are allegedly involved in that conduct." (citation omitted)). Moreover, in weighing the six factors to be assessed in determining whether a request is proportionate, the Court finds factors one, three, five, and six weigh greatly in favor of granting Ms. Jones's requests. While the Court finds the other factors (two and four) are insignificant they nonetheless also favor the granting of the discovery request.

First, the importance of the issues at stake in the action, weighs in favor of granting Ms. Jones's request. Cases in public policy spheres, such as employment practices, "may have importance far beyond the monetary amount involved." *See* Fed. R. Civ. P. 26 advisory committee's note to 1983 amendment. Second, the parties' relative access to relevant information further weighs in favor of granting Ms. Jones's request. The burden of responding to discovery lies heavier on the party who has more information. *See* Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. The Court finds Ms. Jones lacks access to the comparator information she requests, while OUC is in possession of the relevant information. As such, this

"information asymmetry," *id.*, weighs in favor of granting the discovery request. *See Lamaute*, 339 F.R.D. at 36.

Third, the District of Columbia's resources far outweigh those of an individual plaintiff. Fourth, the importance of discovery in resolving the issues is high because the requested discovery goes to a central issue at the "very heart of the litigation"—Ms. Jones's discrimination claim. *Oxbow*, 322 F.R.D. at 8. Comparator information is relevant evidence in an individual's discrimination claim. *Cruz*, 931 F.3d at 1192. Such evidence can be used to show pretext for discrimination. *Id*. Although OUC argues the information requested does not meet the standard for appropriate comparator evidence, that is not the standard during discovery. *See Waters v. U.S. Capitol Police Bd.*, 216 F.R.D. 153, 158 (D.D.C. 2003). It is enough that the requested information could lead to the development of appropriate comparator evidence. *Id.* Fifth and finally, OUC has failed to demonstrate a significant burden or expense in producing the requested information. Accordingly, the likely benefit of the requested discovery is greater than any perceived burden on OUC, thus the Court finds the requested discovery proportional and not unduly burdensome.

With respect to OUC's asserted privacy concerns, Ms. Jones agreed to receive the information with "names replaced by unique identifiers, together with limited additional fields needed to evaluate whether the comparators are meaningful, such as supervisor, deciding official, and job duties or title." Mot. at 13. Additionally, a protective order is in place. *Id.* OUC does not explain why these measures are insufficient to alleviate any purported privacy concern. The Court therefore directs OUC to provide a supplemental answer to the information requested in Interrogatory No. 11. In doing so, it may use unique anonymous identifiers as agreed to by the parties.

**6. Cancelled Performance Evaluations**

Ms. Jones seeks additional document discovery concerning the cancellation of her performance evaluations. RFP No. 1 requests her complete personnel file, including performance evaluations and related records. Mot. at 13. Specifically, Ms. Jones contends that although OUC produced a "performance history log confirming that Plaintiff's evaluations for three consecutive cycles were marked 'Cancelled,'" the records do not show "who cancelled the evaluations, when, or why." Mot. at 13–14.

The Court assumes without deciding that the documents requested are relevant. However, Ms. Jones has not demonstrated that OUC's production is inadequate or incomplete. Although the cancellation of several evaluations raises questions, it does not necessarily establish that additional documents explaining those cancellations exist. *See Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008) ("[S]peculation that there is more will not suffice; if the theoretical possibility that more documents exist sufficed to justify additional discovery, discovery would never end"). Consequently, Ms. Jones has not met her burden to establish that OUC's response is inadequate and the Court, therefore, denies Ms. Jones's motion with respect to RFP No. 1.

**7. Internal-Complaint Investigation Records**

Ms. Jones seeks additional documents concerning her September 7, 2023, internal discrimination complaint. RFP No. 8 requests documents relating to that complaint, including "any investigation file, notes, or records." Def.'s Response to RFP at 4. Specifically, Ms. Jones contends that OUC produced only her complaint email and Director McGaffin's September 8, 2023, acknowledgement, which referred Ms. Jones to an EEO coordinator. Mot. at 14. Ms. Jones says the record "reflects no investigative step of any kind." *Id.*

The Court assumes without deciding that the documents requested are relevant. However, Ms. Jones has not demonstrated that OUC's production is inadequate or incomplete. As the court explained in *Hubbard*, the mere possibility that additional documents exist does not justify further discovery. *See* 247 F.R.D. at 29. Rather, the evidence must permit a reasonable deduction that other responsive documents exist. *Id.* Here, Director McGaffin's acknowledgement and referral to an EEO coordinator does not by itself support a reasonable inference that OUC conducted an investigation. Furthermore, OUC represents that it has completed a reasonable search and produced all the responsive documents. Opp. at 11. Accordingly, the Court denies Ms. Jones's motion with respect to RFP No. 8.

**8. The Calvin Williams Statement**

Ms. Jones moves to compel additional discovery concerning an alleged August 12, 2023, statement by Operations Manager Calvin Williams that Jones was "using FMLA as an excuse to get out of work." Mot. at 15. RFP No. 4 requests documents concerning the purported statement. *Id.* Interrogatory No. 7 further asked OUC to identify individuals who witnessed it. *Id.* Additionally, Interrogatory No. 8 asked OUC to indicate whether it responded to reports of the statement and, if so, to describe what actions it took. *Id.* Ms. Jones contends that, although OUC produced a complaint email documenting the statement and an audio recording, it produced no records reflecting an investigation or witness interviews; instead, OUC simply responded that "it does not believe" the statement was made. *Id.*

The Court assumes without deciding that the information and documents requested are relevant. However, Ms. Jones has not demonstrated that OUC's production is inadequate or incomplete. In response to RFP No. 4, OUC represents that it searched for these documents and did not find anything. Def.'s Response to RFP at 3. "[T]he Court cannot compel [the non-

movant] to produce materials that it does not possess or information it does not have." *Steele v. United States*, No. 1:14-CV-01523-RCL, 2022 WL 2817835, at *5 (D.D.C. July 19, 2022).

In response to Interrogatory No. 7, OUC responded that it does not believe Mr. Williams made this statement. Def.'s Response to Interrogatories at 5. And in response to Interrogatory No. 8, OUC responded that it "did not receive any reports concerning the alleged statement Mr. Willaims made" and "Ms. Jones is the only individual who claims to have heard Mr. Williams make any statements about Ms. Jones's use of FMLA leave." *Id.* at 6. Ms. Jones identifies no basis for concluding that OUC has additional information concerning potential witnesses. Further, Ms. Jones identifies no basis for concluding that OUC received any reports or that its answers were otherwise incomplete. The Court therefore denies Ms. Jones's motion with respect to RFP No. 4, Interrogatory No. 7 and Interrogatory No. 8.

**9. Complete Sworn Interrogatory Answers**

Ms. Jones moves to compel supplemental sworn answers to Interrogatory Nos. 2, 3, 5, 14, and 16. Mot. at 16. Interrogatory No. 2 asks OUC to identify all reasons for its decision and the facts supporting each reason. Def.'s Response to Interrogatories at 2. Interrogatory No. 3 asks OUC to identify, for each reason, the supporting documents, persons with knowledge of the relevant facts, and the date on which OUC became aware of those facts. *Id.* at 3. This information is directly relevant to Ms. Jones's claims. Instead of providing complete answers to these interrogatories, Ms. Jones contends that OUC improperly relied on FRCP 33(d) by simply referring to produced documents. Mot. at 16.

Although Rule 33(d) permits a responding party to identify business records in lieu of an answer, that option is only available when (1) the requested information can be ascertained from those records and (2) the burden of doing so is substantially the same for either party. *See* Fed.

R. Civ. P. 33(d). The responding party must also specify the relevant records "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1). Here, although OUC's identified documents may contain evidence responsive to Interrogatories Nos. 2 and 3, it does not explain how the information sought can be ascertained from those documents. Nor has OUC explained whether the referenced documents identify all persons with knowledge of the relevant facts supporting each termination reason. And OUC has not shown that Ms. Jones could derive the requested answers from those documents with substantially the same effort as OUC. Accordingly, the Court grants Ms. Jones's motion with respect to Interrogatories Nos. 2 and 3.

Interrogatory No. 5 asked OUC to "state whether any person at OUC recommended, suggested, or discussed terminating Alexandria Jones prior to September 7, 2023, and if so, identify each such person, the date, and the substance of the recommendation or discussion." Def.'s Response to Interrogatories at 4. The Court assumes without deciding that the information requested is relevant. OUC responded to this interrogatory with objections rather than responsive information. OUC bases its objection on its claim that this "interrogatory is unduly burdensome, as it would require canvassing the many OUC employees who were offended by Ms. Jones's conduct to determine whether any of them opined (prior to September 7, 2023) that she should be fired," and further objects that the interrogatory is duplicative of other interrogatories. *Id.* at 4–5. Because the Court finds that this request seeks the same information sought by Interrogatory No. 4, it denies Ms. Jones's motion with respect to Interrogatory No. 5.

Interrogatory No. 14 asks OUC to "identify each person who participated in the decision not to interview Alexandria Jones for either the 311 Operations Division supervisory position or

the Watch Commander position, including their name, title, role in the decision, and whether they were aware of Jones's FMLA status or her medical condition at the time of the decision." *Id.* at 8. OUC objects "to the extent it misstates facts and is otherwise duplicative," stating Ms. Jones "was interviewed for the Watch Commander role and was not chosen due to her lack of experience." *Id.* OUC further responds by referring Ms. Jones to the location of documents by the associated Bates numbers and to its answer to Interrogatory No. 12. *Id.*

As to the 311 position, the interrogatory is completely answered by reference to interrogatory answer 12: "Ms. Jones was not selected for an interview for the 311 Operations Division supervisory position because that role was extinguished at the agency. Nobody filled that role because the role no longer existed." *Id.* at 7. As to the Watch Commander position, OUC's response that Ms. Jones was interviewed for the Watch Commander role logically indicates that no individuals participated in the decision not to interview Ms. Jones for the position because she was, in fact, interviewed for that position. Therefore, the interrogatory is completely answered. The Court denies Ms. Jones's motion with respect to Interrogatory No. 14.

Interrogatory No. 16 asks OUC to "Identify the individual(s) selected for the 311 Operations Division supervisory position and the Watch Commander position in 2023, including for each: Name and current position; Date of hire with OUC; Years of experience in supervisory positions as of the time of selection; Whether the individual had previously acted in a Watch Commander or supervisory capacity at OUC." *Id.* at 8. OUC objects "to the extent it seeks confidential District employee data not subject to disclosure without the consent of the District employee(s) at issue," and refers Ms. Jones to District of Columbia's Department of Human Resources Electronic District Personnel Manual (DCHR E-DPM) Chapter 31. *Id.* at 9. OUC

further objects to this request as overbroad and unduly burdensome "in that it seeks information irrelevant to the claims at issue and therefore unlikely to lead to admissible evidence." *Id.*

As to the 311 position, the interrogatory is completely answered by reference to interrogatory answer 12: "Nobody filled that role because the role no longer existed." *Id.* at 7. As to the Watch Commander position, OUC argues DCHR E-DPM bars the disclosure of this information. However, they have not made a clear showing why the information requested falls under this protection. *See Jefferson v. Austin*, 345 F.R.D. 249, 259 (D.D.C. 2024) ("The Department cites to the statute without providing any reasoning for how the information Jefferson seeks falls under the ambit of the statute."). Further, under DCHR E-DPM Ch. 31 § 3102.4: "The Office of Personnel or an Independent Personnel Authority may disclose, without prior consent of the data subject, specified information from a system of personnel records whenever such disclosure is pursuant to an order issued by any of the following:…Court of competent jurisdiction, including the judicial system of the United States, the District of Columbia." And under § 3113.1, "The following information about most present and former government employees shall be available to the public: Name; Present and past position titles; Present and past grades; Present and past salaries; Present and past duty stations." It appears that much of the information requested may permissibly be disclosed. Further, confidentiality and privacy interests are protected by the protective order entered in this case, which allows sensitive information to be filed under seal. Accordingly, the Court grants Ms. Jones's motion with respect to Interrogatory No. 16 and orders OUC to supplement the response in relation to the Watch Commander position.

### B. Sworn Search Declaration

Ms. Jones moves to compel OUC to serve "a declaration from a knowledgeable IT or records custodian identifying, for each category at issue, the custodians searched; the systems and platforms searched, including email, Microsoft Teams, and text messages on District-issued or District managed devices; the search terms and date ranges applied; whether responsive materials were located and withheld; and, for any channel not searched, the reason." Mot. at 17. Ms. Jones does not cite to any authority supporting such a request. Although OUC's acknowledgement of difficulties obtaining some of those communications raised limited questions concerning its searches (*see e.g.*, *supra* Section 1, text messages & Teams communications), the Court has addressed those limited concerns by ordering the targeted additional discovery described above. Otherwise, the Court denies Ms. Jones's request for a sworn search declaration.

### C. Reasonable Expenses

Ms. Jones requests her reasonable expenses incurred in bringing this motion under Fed. R. Civ. P. 37(a)(5). Mot. at 18. Because the Court grants Ms. Jones's motion in part, the Court has discretion in deciding whether to apportion the parties' reasonable expenses. *See Jefferson*, 345 F.R.D. at n.5 (citing *Baylor v. Mitchelle Rubenstein & Assocs., P.C.*, 857 F.3d 939, 951 (D.C. Cir. 2017)). Courts apportion reasonable expenses by looking at each individual claim for relief and determining whether the actions of the non-prevailing party were "substantially justified." *Buie v. D.C.*, 327 F.R.D. 1, 15 (D.D.C. 2018) ("A party meets the 'substantially justified' standard when there is a 'genuine dispute' or if 'reasonable people could differ' as to the appropriateness of the motion."). Courts also look at the relative success of the parties. *Id.* In this case, the Court is granting in part and denying in part Ms. Jones's motion, and OUC

presented no bad faith or frivolous objections to the discovery requests. These circumstances weigh against an award of expenses. *See e.g.*, *Borum v. Brentwood Vill., LLC*, No. CV 16-1723 (RC), 2020 WL 5291982, at *1 (D.D.C. Sept. 4, 2020) (denying plaintiffs' motion for attorneys' fees and expenses "because the Court cannot conclude that defendants unjustifiably withheld certain documents…in bad faith"); *Holland v. Freeman United Coal Mining Co.*, No. 07-1050, 2008 WL 11501533, at *4 (denying fees where the parties have "legitimate disputes" about whether certain types of evidence are relevant). Accordingly, the Court denies Ms. Jones's request for reasonable expenses. Each party shall bear its own costs and fees.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel (ECF No. 25) is **GRANTED IN PART** and **DENIED IN PART**, Defendant's Motion for Leave to File its Opposition to Plaintiff's Motion to Compel Under Seal (ECF No. 26) is **GRANTED**, and Plaintiff's Motion for Leave to Seal Confidential Exhibit (ECF No. 27) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: November 16, 2026

RUDOLPH CONTRERAS
United States District Judge